**Saunders**
**v.**
**Cardiology Consultants, Inc.**
*[Cite as 3 AOA 2]*

*Case No. C-890229*
*Hamilton County (1st)*

*Decided May 23, 1990*

Lindhorst & Dreidame, Michael F. Lyon, Esq., and Gary F. Franke, Esq., 1700 Central Trust Center, 201 East Fifth Street, Cincinnati, Ohio 45202, for Plaintiff-Appellant.

Short, Routt, Weber & Davis, Joseph Pflum, Esq., and Sherry Davis, Esq., Six East Fourth Street, Suite 1400, Cincinnati, Ohio 45202, for Defendant-Appellee Pete L. Caples, M.D.

Rendigs, Fry, Kiely & Dennis and Frederick Brockmeier, Esq., 900 Central Trust Tower, Cincinnati, Ohio 45202, for Defendant-Appellee Cardiology Consultants, Inc.

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, and the briefs and arguments of counsel. We have removed this case from our accelerated calendar and placed it on our regular calendar.

Plaintiff-appellant, Riley C. Saunders, executor of the estate of Betty Ann Saunders, appeals from a summary judgment granted in favor of the defendants-appellees, Pete L.

Caples, M.D., and Cardiology Consultants, Inc. (CCI), in a wrongful-death action for alleged medical malpractice. In both assignments of error plaintiff contends that the deposition of his expert witness established the existence of genuine issues of material fact upon which reasonable minds could differ as to the issues of the defendant's negligence and proximate cause. We find that the assignments of error are well taken.

On December 10, 1984, plaintiff's spouse, Betty Ann, then forty-two years old and in her thirty-seventh week of pregnancy, was seen by her family physician. He observed that she was bloated and experiencing extreme shortness of breath and irregular heart beat. He referred her immediately to Dr. Caples, a cardiologist. After his examination and an echocardiogram, Dr. Caples's diagnosis of her condition was severe congestive heart failure probably caused by cardiomyopathy. Following her admission to Jewish Hospital, Dr. Caples attempted to stabilize Mrs. Saunders but on December 12, 1984, she went into pulmonary edema, and despite his efforts, she died. The child was delivered by cesarean section , but later died on August 7, 1986.

Subsequently, plaintiff filed a wrongful-death action, as executor and administrator respectively of the estates of his deceased spouse and son, against the obstetrician, Eric D. Silver, M.D., Obstetric and Gynecology Associates, Inc., Dr. Caples, CCI, and Jewish Hospital of Cincinnati, Inc. After plaintiff voluntarily dismissed Jewish Hospital, the trial court granted summary judgment for the remaining defendants on the claim for the wrongful death of Michael Scott, and for Dr. Caples and CCI on the claim for the wrongful death of Mrs. Saunders.

To maintain a medical claim for malpractice, expert testimony is necessary to establish negligence where the facts to be adduced are beyond a lay person's comprehension. *Bruni v. Tatsumi* (1976), 46 Ohio St. 2d 127, 346 N.E.2d 673. When a movant in a medical claim supports his motion for summary judgment with expert testimony that demonstrates compliance with the standard of care in the medical community, absent expert evidence to the contrary, this unopposed medical expert testimony establishes the standard of care and the movant's compliance. *Hoffman v. Davidson* (1987), 31 Ohio St. 3d 60, 62, 508 N.E.2d 958, 960; *Guth v. Huron Road Hospital* (1987), 43 Ohio App. 3d 83, 84, 539 N.E.2d 670, 672.

In opposition to the motion for summary judgment and the accompanying opinions given by Dr. Caples in his deposition, plaintiff submitted the deposition of Alan E. Kravitz, M.D., a board-certified specialist in internal medicine and cardiology. Upon review of the hospital records Dr. Kravitz concluded that Betty Ann Saunders suffered from peripartum cardiomyopathy, an uncommon form of congestive heart failure affecting pregnant women near the time of delivery. He testified that Dr. Caples, having diagnosed this condition, deviated from the standard of care exercised by cardiologists under similar circumstances by failing to discuss with the obstetrician, Dr. Silver, the importance of "evacuating the uterus." According to Dr. Kravitz, Dr. Caples should have "pushed" for immediate delivery of the baby or abortion, which, in his opinion, if done before December 12, 1984, would have probably prevented the patient's death. He based his opinion that Dr. Caples failed to pursue this course with the obstetrician on an absence of any notations to this effect in the patient's hospital charts.

Dr. Kravitz further testified in his deposition as follows:

"I think that it's more likely than not that a woman with peripartum cardiomyopathy, particularly one that is pregnant, and I think I am just going to address myself to that because that's what we appear to be dealing with, someone who is pregnant and has cardiomyopathy, that more likely than not, if her uterus is promptly evacuated upon diagnosis or upon the indication of congestive cardiac failure that she will survive and live a perfectly normal life."

Contrary to Dr. Caples's argument that Dr. Kravitz failed to render an opinion that the chance of survival would have been better than 50% had the patient's uterus been evacuated before December 12, 1984, consistent with plaintiff's burden established in *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St. 2d 242, 272 N.E.2d 97, we find that Dr. Kravitz's foregoing testimony is sufficient for a *prima facie* showing of proximate cause that survives summary judgment.

For purposes of the summary-judgment motion, we also reject Dr. Caple's argument that R.C. 4731.91(D) gives him immunity from civil liability for not performing or participating in an abortion. Although Dr. Kravitz referred to an abortion several times, his deposition demonstrates that he did not consider abortion synony-

mous with evacuating the uterus in the case *sub judice* since ultimately there was a live delivery. Furthermore, Dr. Caples contends that he did in fact discuss the various options with Dr. Silver, and the record does not demonstrate that the choice was ever between abortion and the delivery which eventually occurred.

The test for medical malpractice is whether the injury or death complained of "was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under similar circumstances or by the failure to do something that such a physician would have done." *Thomas v. Mantanguihan* (June 30, 1982), Hamilton App. No. C-810776, unreported (applying *Bruni v. Tatsumi, supra.)*

Construing the evidence most strongly in favor of the plaintiff as required by Civ. R. 56(C), reasonable minds cannot come to but one conclusion adverse to the plaintiff since the deposition of his expert witness presented genuine issues of material fact involving Dr. Caples's care and treatment and the resulting death of Betty Ann Saunders. Plaintiff's first assignment of error is well taken.

In his second assignment of error, plaintiff contends that the trial court improperly granted summary judgment for CCI on his claim for the wrongful death of Betty Ann Saunders.

In December of 1984, Dr, Caples was an employee of CCI. Therefore, CCI can be held liable under the doctrine of *respondeat superior* for his negligent acts, during the physician-patient relationship. See *Prince v. St. Francis-St. George Hospital, Inc.* (1985), 20 Ohio App. 3d 4, 484 N.E.2d 265. Since genuine issues of material fact were raised as to Dr. Caples's alleged negligence in treating Betty Ann Saunders, genuine issues of material fact also exist concerning the corporation's potential liability for those acts and its motion for summary judgment was improperly granted. Plaintiff's second assignment of error is well taken.

The judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with law.

*Judgment reversed and cause remanded.*

SHANNON, P.J., DOAN and GORMAN, JJ.