OPINION
Plaintiff-appellant, Lisa Carnahan, appeals from a judgment of the Mahoning County Common Pleas Court, granting summary judgment in favor of defendant-appellee, Dr. John J. Buckley, Jr., in a suit for medical malpractice.
On February 9, 1998, appellant filed a complaint for medical malpractice naming as party defendants appellee and Northside Medical Center (NMC). The complaint alleged that appellee and NMC were negligent in the performance of appellant's breast reduction surgery. Appellee filed an answer setting forth various defenses and denying that he was negligent. In addition, appellee included a counterclaim for the balance owed on surgical fees for appellant's "bilateral knee liposuction." NMC filed a separate answer setting forth various defenses and denying negligence.
After a stay of proceedings precipitated by the liquidation of appellee's insurance carrier, appellee refiled his answer and counterclaim on September 23, 1998. Appellee also filed a notice of service of discovery, indicating that interrogatories and a request for production of documents had been forwarded to appellant. On October 8, 1998, NMC refiled its answer.
On January 20, 1999, appellee filed a motion to compel appellant to respond to the interrogatories and request for production of documents. In the alternative, appellee sought a motion to dismiss based on appellant's failure to prosecute her claim. On February 1, 1999, the trial court issued a judgment entry ordering appellant to respond to the discovery requests on or before February 15, 1999. On February 2, 1999, NMC filed a similar motion to compel.
On February 4, 1999, appellant filed a motion requesting a fourteen-day extension in which to respond to appellee's joint motion to compel/dismiss. The trial court sustained appellant's motion giving her until February 19, 1999, to respond to appellee's motion.
On February 12, 1999, the trial court sustained NMC's motion to compel and ordered appellant to respond to NMC's interrogatories and request for production of documents on or before February 22, 1999.
The time for appellant to make some sort of response had passed with no action taken by appellant to prosecute her claim. On March 8, 1999, appellee filed a joint motion for sanctions and dismissal of appellant's claim based on appellant's continued failure to respond to the court's orders requiring appellant to respond to the interrogatories and requests for production of documents. NMC filed a motion to dismiss on the same grounds.
On March 12, 1999, appellant responded to both appellee's and NMC's motion requesting an additional thirty days, until April 12, 1999, to respond to their discovery requests. Appellant claimed that she was unable to respond to the discovery requests due to difficulty in obtaining an expert evaluation resulting from appellee's and NMC's alleged failure to provide all relevant medical records.
On April 13, 1999, appellant filed a notice of voluntary dismissal of NMC. Appellant also filed a notice of service of discovery, indicating that interrogatories and a request for production of documents had been forwarded to appellee.
On April 14, 1999, the court issued a judgment entry ordering both parties, within two weeks, to inspect appellee's original chart to determine if photographs of appellant's surgery still existed and, if so, to make duplicates of those photos.
On August 23, 1999, appellee filed a motion for summary judgment based on appellant's failure to produce any evidence going to the material elements of her claim. On September 30, 1999, appellant filed a motion requesting an extension until October 15, 1999, in which to respond to appellee's summary judgment motion. On October 4, 1999, appellee filed a motion in opposition to appellant's motion for an extension of time. Appellee pointed out that, under the local rules, appellant had until September 6, 1999, to respond to his motion, making appellant already twenty-four days late. Nonetheless, the court sustained appellant's motion on October 6, 1999, giving her until October 15, 1999, to respond to appellee's summary judgment motion.
On October 22, 1999, appellant finally responded to appellee's motion. Appellant stated that she was unable to produce an expert report because all of the pre-operative photographs had either been lost or destroyed by appellee. Appellant also stated that she intended to proceed on a "spoliation of the evidence" theory.
On November 22, 1999, the court issued a judgment entry granting summary judgment in favor of appellee based on appellant's failure to produce any evidence in support of her claim. This appeal followed.
Appellant raises two assignments of error, which state respectively:
 "The trial court abused its discretion in granting appellee's motion for summary judgment when there was a clear jury question on a spoliation of evidence claim.
 "The trial court abused its discretion in concluding that pre-operative photographs were factually irrelevant when the trial court had no way of knowing what the pre-operative photographs would reveal."
Appellant's assignments of error involve similar legal and factual issues relating to the trial court's award of summary judgment in favor of appellee and will be addressed together. Also, at the outset, it should be noted that appellant has failed to comply with Local App.R. IV(2), which requires appellant to attach to his brief a copy of the decision appealed from.[1]
An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. WillisDay Warehousing Co. (1976), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * *" (Emphasis sic.) Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293
The "portions of the record" or evidentiary materials listed in Civ.R. 56(C) include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The court is obligated to view all the evidentiary material in a light most favorable to the nonmoving party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317.
 "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher, 75 Ohio St.3d at 293
In Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, paragraph one of the syllabus, the Ohio Supreme Court held:
 "In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things."
In his motion for summary judgment, appellee pointed to appellant's failure to produce expert testimony establishing the relevant standard of care in the medical community, how he deviated from the standard of care, and that any alleged deviations from the standard of care proximately caused injury to appellant. In his motion, appellee attached his own affidavit stating that he is a physician licensed to practice in this state specializing in plastic surgery; that he spends more than 50 percent of his professional time in the active clinical practice of medicine, specifically plastic surgery; that he performed a breast surgery on appellant due to a breast deformity; and that, based on his education, training, and experience, complied with acceptable standards of care in his treatment of appellant.
Therefore, appellee met his initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of appellant's claim. In addition, appellee accomplished this by specifically pointing to evidence which affirmatively demonstrated that appellant had no evidence to support her claim.
In response to appellee's motion, appellant claimed that she was unable to produce an expert report because all pre-operative photographs had either been lost or destroyed by appellee. Appellant attached two exhibits in support of her motion. Exhibit A was a letter from appellee's counsel stating that appellee does not have the preoperative photographs and that they were likely sent to appellant's insurance company. Exhibit B is a letter from appellant's insurance company stating that they have no record that pre-operative photographs relating to appellant's surgery were ever submitted by appellee. Based on the lack of the photographs, appellant stated that she intended to proceed on a "spoliation of the evidence" theory.
Since appellee satisfied his initial burden, appellant had the reciprocal burden to set forth specific facts showing that there was a genuine issue for trial. The plaintiff may not simply rest upon the allegations of medical negligence as stated in her complaint. Saundersv. Cardiology Consultants, Inc. (1990), 66 Ohio App.3d 418, 420; Hoffmanv. Davidson (1987), 31 Ohio St.3d 60, 61; Guth v. Huron Road Hosp. (1987), 43 Ohio App.3d 83, 84. In Hoffman, supra, the Ohio Supreme Court held that an affidavit of a treating physician is a legally sufficient basis upon which to grant a motion for summary judgment in a medical malpractice action absent any opposing affidavit of a qualified expert witness for the plaintiff. Id. at 62.
A plaintiff in a malpractice action is required to provide expert testimony establishing the standard of care and that it was not met.Bruni, 46 Ohio St.2d at 130. It is well established that "[f]ailure to provide the recognized standards of the medical community is fatal to the presentation of a prima facie case of medical malpractice by the Plaintiffs." Rogoff v. King (1993), 91 Ohio App.3d 438, 446; Jones v.Roche Laboratories (1992), 84 Ohio App.3d 135, 139.
In this case, appellant offered no such evidence. Although appellant claimed that she was unable to obtain an expert opinion due to the lack of pre-operative photographs, appellant offered no evidence in support of this assertion. Consequently, appellant failed to meet her reciprocal burden and appellee was entitled to judgment as a matter of law.
As below, appellant maintains on appeal that summary judgment was improper because she "intended" to proceed on a "spoliation of the evidence" theory. In Smith v. Howard Johnson Co., Inc. (1993),67 Ohio St.3d 28, 29, the Ohio Supreme Court acknowledged that a cause of action exists in tort for interference with or destruction of evidence. The elements of a claim for interference with or destruction of evidence are:
 "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.]" Id.
In this case, appellant presented no evidence going to the elements for a claim for interference with or destruction of evidence. Appellant's intention to proceed with such a claim is insufficient. The most conspicuous omission is any evidence in the form of an affidavit or otherwise that the pre-operative photographs were necessary in order for an expert to make a determination of whether appellee was negligent. Moreover, appellant's complaint does not set forth such a claim nor has appellant made any attempt to amend her complaint to reflect her "intention."
Accordingly, appellant's assignments are without merit.
The judgment of the trial court is hereby affirmed.
VUKOVICH, J., concurs, WAITE, J., concurs.
[1] Local App.R. IV(2) states:
 "In the event that the trial court has filed or rendered an opinion, findings of fact and conclusions of law or memorandum expressing the rationale of its decision, a copy of such opinion, findings of fact and conclusions of law or memorandum shall be attached as an appendix to the appellant's brief." (Emphasis added.)