[Cite as *Hampton v. Chillicothe Correctional Inst.*, 2010-Ohio-3146.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

LEE HAMPTON

Plaintiff

v.

CHILLICOTHE CORRECTIONAL INSTITUTION

Defendant

Case No. 2009-04530-AD

Deputy Clerk Daniel R. Borchert

MEMORANDUM DECISION

{¶ 1} Plaintiff, Lee Hampton, an inmate incarcerated at defendant, Chillicothe Correctional Institution (CCI), filed this claim alleging three separate acts of negligence on the part of CCI staff for (1) property loss, (2) refusal to provide access to wrist braces, and (3) delay in dispensing anti-inflammatory medication. Plaintiff has requested damage recovery in the amount of $35.00 for his property loss claim. In regard to his claims based on defendant's denied access to medical therapeutic appliances and delay in dispensing medication, plaintiff has requested damages in the amount of $2,464.00 for "pain, suffering, worsened and lengthened medical condition, failure of reasonable care, and other damages." Plaintiff's total damage claim amounts to $2,499.00. The $25.00 filing fee was paid. Plaintiff's three claims shall be addressed separately.

{¶ 2} Property Loss Claim

{¶ 3} On May 22, 2008, plaintiff was transported from CCI to The Ohio State University Medical Center (OSU Medical Center), on an "Emergency Round Trip" to receive treatment. Plaintiff's personal property was inventoried, packed, and delivered into the custody of CCI staff incident to his being transported to the OSU Medical

Center.  Plaintiff explained that "[a]s a result of the conditions of said 'Round Trip' the Plaintiff's property had to be sprayed with (decontaminant) and all open foods (discarded)."  Additionally, plaintiff asserted several other property items were not packed by CCI staff on May 22, 2008 and are presumed lost or discarded.  Plaintiff claimed the discarded property items included oatmeal, peanut butter, coffee, corn chips, pretzels, toothpaste, five pens, three pencils, tweezers, scissors, two razors, a mechanical pencil, and part of a plastic spoon/knife/fork set.  Also, plaintiff claimed the following items were not packed:  a lock, a lighter, a toothbrush, a toothbrush holder, Q-Tips, laundry detergent, dental floss, a beard trimmer guard, a beard trimmer brush, a bowl lid, a shoe heel lift, a headphone adapter, and a tape measure.  Plaintiff filed a copy of a "Disposition of Grievance," dated June 25, 2008, wherein defendant acknowledged plaintiff's food products were discarded after being sprayed with decontaminant.

{¶ 4}  Defendant explained plaintiff's property was disinfected before being returned to him and his "[o]pen food items were discarded."  Defendant related plaintiff "was offered reimbursement" for his discarded property.  Defendant contended plaintiff has failed to offer sufficient evidence to prove the remaining property items claimed were lost or discarded as a proximate cause of negligence on the part of CCI personnel.

{¶ 5}  Plaintiff filed a response pointing out defendant did not keep a record of property items discarded by CCI staff.  Plaintiff did not provide any evidence to prove any property other than food products were discarded by defendant.  Plaintiff did not provide any evidence other than his own assertion to prove any of his property was lost as a result of defendant either failing to pack up all his property or misplacing the property after exercising control over it.

{¶ 6}  For plaintiff to prevail on a claim of negligence, he must prove, by a preponderance of the evidence, that defendant owed him a duty, that it breached that duty, and that the breach proximately caused his injuries.  *Armstrong v. Best Buy Company, Inc.,* 99 Ohio St. 3d 79, 2003-Ohio-2573,¶8 citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 472 N.E. 2d 707.  Plaintiff has the burden of proving, by a preponderance of the evidence, that he suffered a loss and that this loss was proximately caused by defendant's negligence.  *Barnum v. Ohio State University* (1977), 76-0368-AD.  However, "[i]t is the duty of a party on whom the burden of proof rests to produce evidence which furnishes a reasonable basis for

sustaining his claim. If the evidence so produced furnishes only a basis for a choice among different possibilities as to any issue in the case, he fails to sustain such burden." Paragraph three of the syllabus in *Steven v. Indus. Comm.* (1945), 145 Ohio St. 198, 30 O.O. 415, 61 N.E. 2d 198, approved and followed. This court, as trier of fact, determines questions of proximate causation. *Shinaver v. Szymanski* (1984), 14 Ohio St. 3d 51, 14 OBR 446, 471 N.E. 2d 477. Although strict rules of evidence do not apply in administrative determinations, plaintiff must prove his case by a preponderance of the evidence. *Underwood v. Dept. of Rehabilitation and Correction* (1985), 84-04053-AD.

{¶ 7} Although not strictly responsible for a prisoner's property, defendant had at least the duty of using the same degree of care as it would use with its own property. *Henderson v. Southern Ohio Correctional Facility* (1979), 76-0356-AD. Plaintiff must produce evidence which affords a reasonable basis for the conclusion defendant's conduct is more likely than not a substantial factor in bringing about the harm. *Parks v. Department of Rehabilitation and Correction* (1985), 85-01546-AD. In regard to the loss of oatmeal, peanut butter, coffee, corn chips, pretzels, and toothpaste, negligence on the part of defendant has been established. *Baisden v. Southern Ohio Correctional Facility* (1977), 76-0617-AD. Plaintiff's failure to prove delivery of the remaining property to defendant constitutes a failure to show imposition of a legal bailment duty on the part of defendant in respect to lost property. *Prunty v. Department of Rehabilitation and Correction* (1987), 86-02821-AD. Plaintiff cannot recover for property loss when he fails to produce sufficient evidence to establish that defendant actually assumed control over the property. *Whiteside v. Orient Correctional Inst.*, Ct. of Cl. No. 2002-05751, 2005-Ohio-4455; obj. overruled, 2005-Ohio-5068. Plaintiff has not proven, by a preponderance of the evidence, that he suffered any additional property loss as a result of any negligence on the part of defendant. *Fitzgerald v. Department of Rehabilitation and Correction* (1998), 97-10146-AD; *Merkle v. Dept. of Rehab. and Corr.* (2001), 2001-03135-AD. Defendant is liable to plaintiff for damages in the amount of $6.85, plus the $25.00 filing fee which may be awarded as costs pursuant to R.C. 2335.19. See *Bailey v. Ohio Department of Rehabilitation and Correction* (1990), 62 Ohio Misc. 2d 19, 587 N.E. 2d 990.

{¶ 8} Access To Wrist Braces Claim

{¶ 9} Plaintiff advised he has been diagnosed and treated for Carpal Tunnel

Syndrome (CTS) since August 1998. Plaintiff further advised treatment for his CTS has included two prior surgeries, wearing wrist braces, and taking prescribed Ibuprofen to alleviate inflammation and pain. On May 22, 2008, when plaintiff was transported to the OSU Medical Center from CCI he was not permitted to bring his CTS wrist braces to wear on the trip. Plaintiff related that he asked CCI employee Nurse Jim Gardner for permission to bring his CTS wrist braces on the medical round trip and permission was denied. Plaintiff pointed out he was transported to the OSU Medical Center "wearing a waist chain and handcuffs to restrict his mobility." Apparently, plaintiff was required to be handcuffed and wear the waist chain for the entire duration of the medical round trip (an estimated six hours); except for a few minutes when OSU Medical Center staff took an x-ray of his chest. Plaintiff noted that during the entire time he was restrained he experienced "increasing levels of tingling, numbness, and pain in the fingers, hands and arms."

{¶ 10} Plaintiff recalled that when he returned from the May 22, 2008 medical round trip he was not permitted to retrieve his personal property, which included his CTS wrist braces and Ibuprofen medication due to the decontamination procedures utilized by CCI personnel. According to plaintiff he made a request on May 23, 2008, through a CCI block officer, to obtain substitute CTS wrist braces and Ibuprofen from CCI medical services. Plaintiff acknowledged he did obtain a non-prescription anti-inflammatory medication from a CCI nurse on duty. However, plaintiff reported he was not allowed to obtain substitute CTS wrist braces. Plaintiff related he did retrieve his CTS wrist braces and prescription medication on May 25, 2008, but during the interim when he did not have use of the appliances he experienced a "heightened degree of pain, tingling, and numbness in the fingers, hands and arms." Plaintiff further related he "continued to experience episodes of pain, tingling and numbness in the fingers, hands and arms for several months subsequent to May 25, 2008, that were heightened in frequency intensity and duration, as compared to (his) condition prior to May 22, 2008."

{¶ 11} In regard to plaintiff's claim involving denial of access to his CTS wrist braces, defendant has denied any liability in this matter. Defendant explained plaintiff does not wear his issued braces continuously and was not wearing the braces at the time he was "processed for transport" on May 22, 2008. Defendant further explained plaintiff was denied access to his CTS wrist braces for security purposes since braces "may be used to conceal contraband and they make it more difficult to secure an inmate

with restraints such as handcuffs." Furthermore, defendant pointed out inmates are "generally not permitted to bring personal property with them on the transport." Defendant acknowledged medical aids such as plaintiff's CTS wrist braces may be permitted on transport if the aids are determined to be medically necessary. Defendant asserted plaintiff did not provide sufficient evidence to prove his CTS wrist braces were medically necessary at the time he was transported to the OSU Medical Center. Defendant maintained plaintiff did not obtain required documentation (medical order or restriction) from CCI medical staff to establish the CTS wrist braces are medically necessary at times when he is being transported. Additionally, defendant contended plaintiff did not supply required medical evidence to prove he was injured as a direct result of having access to his CTS wrist braces denied.

{¶ 12} Defendant argued that if the claims involving denied access to braces and delay in dispensing medication are addressed as medical malpractice claims, plaintiff has not provided required documents and therefore, the claims should be dismissed. Defendant advised plaintiff did not file "an affidavit of merit as required under Civ.R. 10(D)(2)." See *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St. 3d 167, 2008-Ohio-5379. Also, defendant contended "to the extent that plaintiff's claim arise from the medical diagnosis, care, or treatment rendered by the defendant, they must be proven by medical testimony." See *Bruni v. Tatsumi* (1976), 46 Ohio St. 2d 127, 75 O.O. 2d 184, 346 N.E. 2d 673. Defendant asserted plaintiff failed to produce both an affidavit of merit and medical testimony to support his claims and therefore, any actions based on medical malpractice should be dismissed.

{¶ 13} Plaintiff responded asserting that due to his years of using CTS wrist braces he "has come to learn the times when it is absolutely necessary to use these braces, to prevent a flare up before it occurs." Plaintiff acknowledged he was not wearing CTS braces when he was ordered to report to the CCI medical unit on May 22, 2008 where he was informed by CCI Nurse Tim Gardner that he was to be taken to the OSU Medical Center for testing. Plaintiff recalled that upon receiving this information he made a request that his braces be retrieved from his housing unit so he could wear them on his trip to the OSU Medical Center. Plaintiff again noted his request to wear his CTS wrist braces or any braces available at the CCI medical unit was denied by Nurse Gardner.

{¶ 14} Plaintiff maintained that his request to wear CTS wrist braces during the

course of the medical round trip was denied by Nurse Gardner despite the fact he had received prior medical authorization to use the braces. Plaintiff referenced a copy of a "Medical Restriction(s) Statement" dated December 13, 2007 that he filed with his complaint in which defendant's employee E. Brown RN wrote "allow use of carpel braces." Plaintiff stated the December 13, 2007 Medical Restriction(s) Statement "is a doctor's order, first coming from the OSU Ortho specialists at [d]efendant's Correctional Medical Center, through the CCI General Practitioner." there is no physician's signature on the Medical Restriction(s) Statement. Plaintiff reported Nurse Gardner did not make any attempt to discover if there were any restrictions or limitations on the use of the CTS wrist braces, but "merely disallowed Plaintiff's request to have these braces brought for use." Plaintiff insisted his request to use his braces was denied by Nurse Gardner acting alone without seeking any physician's recommendation or authorization. Plaintiff stated "Nurse Gardner simply refused to call plaintiff's cellblock for these braces as soon as plaintiff requested this be done." Plaintiff argued Nurse Gardner acted negligently in not permitting use of the CTS wrist braces and this negligent act proximately caused the injury claimed.

{¶ 15} Plaintiff contended under the facts of this claim he is not required to produce expert testimony to establish liability based on the denial of access to his CTS wrist braces. Plaintiff asserted the refusal to give him access to his CTS wrist braces constituted clear actionable negligence on the part of defendant's medical professional and consequently he should not be required to provide expert medical testimony to prove he was injured as a proximate cause of the denial of access to his medical appliances. Furthermore, plaintiff referenced a grievance dated September 3, 2008 he filed (copy submitted) wherein defendant's inspector noted the following concerning the denial of access to the CTS wrist braces: "I also believe your issue with RN T. Gardner and being denied access to your braces is valid." Plaintiff argued this finding by defendant's inspector constitutes an admission of liability.

{¶ 16} Additionally, plaintiff maintained his claim involving the denial of access to his CTS wrist braces should not be construed as a medical malpractice issue. Plaintiff stated "[i]t is mere coincidence that Tim Gardner was a nurse and made the decision to deny plaintiff his braces, only because this was an emergency round trip" to the OSU Medical Center and back to CCI. Plaintiff explained had his trip been a regularly scheduled round trip then CCI correction officers would have made the decision to

either grant or deny his access to his wrist braces. Plaintiff contended the denied access to his medical appliances should be considered as a mere negligence claim and not as a professional malpractice issue.

{¶ 17} Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being. *Clemets v. Heston* (1985), 20 Ohio App. 3d 132, 136, 20 OBR 166, 485 N.E. 2d 287. Reasonable or ordinary care is that degree of caution and foresight which an ordinarily prudent person would employ in similar circumstances. *Smith v. United Properties, Inc.* (1965), 2 Ohio St. 2d 310, 31 O.O. 2d 573, 209 N.E. 2d 142.

{¶ 18} As an initial matter, to the extent plaintiff claimed defendant was negligent in not giving him access to his wrist braces during the trip to the OSU Medical Center, the court finds that defendant's decision was based on security concerns and that defendant is entitled to discretionary immunity. The Supreme Court of Ohio has held that "[t]he language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State* (1984), 14 Ohio St. 3d 68, 70. Prison officials are afforded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish* (1979), 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447. The denial of access to braces as a negligence issue is a matter that this court shall grant deference to defendant as a judgment made for security measures.

{¶ 19} A "medical claim" is defined in R.C. 2305.113(E)(3) as "any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person * * *."

{¶ 20} Defendant asserted plaintiff's action involving the decision of Nurse Gardner to deny access to wrist braces is indeed a medical claim of professional negligence and plaintiff did not offer sufficient evidence to sustain his burden of proof on such a claim. Defendant based its position pursuant to the holding in *Bruni*, which required plaintiff must first prove: 1) the standard of care recognized by the medical community; 2) the failure of defendant to meet the requisite standard of care; and 3) a direct causal-connection between the medically negligent act and the injury sustained. The appropriate standard of care must be proven by expert testimony. *Bruni* at 130. That expert testimony must explain what a medical professional of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances. *Bruni*. The exception to that rule is "in cases where the nature of the case is such that the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it * * *." *Bruni*. However, the exception is limited in scope and "[r]elatively few courts in Ohio have found the common knowledge exception applicable so as to obviate the need for expert witness testimony on the malpractice issue." *Buerger v. Ohio Dept. of Rehab. & Corr.* (1989), 64 Ohio App. 3d 394, 399, 581 N.E. 2d 1114.

{¶ 21} Plaintiff's allegation of negligence concerns whether the decision by defendant's medical professional to deny access to wrist braces exacerbated or had any effect on his existing CTS. The court finds that this allegation pertains to matters that are not within the common knowledge and experience of laymen. Rather, plaintiff's allegation concerns the professional skill and judgment used by the nurse who saw him. Therefore, expert testimony is required both to establish the requisite standard of care and to show that defendant's employee deviated from that standard of care.

{¶ 22} *In Buerger*, the Tenth District Court of Appeals found the *Bruni v. Tatsumi* standard applicable to a claim of medical malpractice brought by a prisoner. When a plaintiff is alleging substandard medical treatment, expert medical opinion must be provided to establish a prima facie case. Plaintiff may not simply rest upon allegations of medical negligence as stated in his complaint. *Saunders v. Cardiology Consultants, Inc.* (1990), 66 Ohio App. 3d 418, 420, 584 N.E. 2d 809; *Hoffman v. Davidson* (1987), 31 Ohio St. 3d 60, 61, 31 OBR 165, 508 N.E. 2d 958; *Guth v. Huron Road Hospital* (1987), 43 Ohio App. 3d 83, 84, 539 N.E. 2d 670. In the present claim, plaintiff has

failed to produce expert medical opinion regarding issue of denied access to his braces and any adverse medical effect such denied access would present. Since plaintiff failed to offer required testimony any claim based on professional negligence is denied.

{¶ 23} Delay In Dispensing Medication Claim

{¶ 24} Plaintiff pointed out he was issued a prescription for ibuprofen to treat the pain and inflammation related to his CTS. Plaintiff recalled that on or about July 23, 2008 he submitted a "sick call" slip in order to obtain a renewal of his ibuprofen prescription, which was due to expire approximately six days later. Plaintiff related he was ultimately seen on "sick call" on July 28, 2008 by CCI Nurse, Amy Jones, but was unable to obtain a renewal of his ibuprofen prescription and was referred to see a physician on "Doctors's Sick Call" on or about August 14, 2008. According to plaintiff, he was actually reissued a prescription for ibuprofen on August 14, 2008 that was filled by the CCI pharmacy on August 19, 2008. Plaintiff observed he was without ibuprofen or other anti-inflammatory medication for a twenty-one day period. Plaintiff insisted defendant's normal procedure for renewing inmate prescriptions would have been for Nurse Jones to actually write the prescription for a doctor to subsequently sign, but this procedure was not followed and therefore plaintiff was without prescribed medicine for a three week period. Plaintiff referenced a September 3, 2008 grievance disposition (copy submitted) as proof Nurse Jones acted improperly in regard to the issue of timely dispensing medication. In this grievance disposition defendant's Inspector of Institutional Services noted "I believe your issues with RN Amy Jones and the issuance of your medications is valid."

{¶ 25} Defendant acknowledged plaintiff "did have and still does have a prescription for Ibuprofen," which did lapse before plaintiff could be seen by a physician and have the prescription renewed. Defendant disputed plaintiff's contention that he was not required to see a physician to have his prescription renewed. Defendant asserted "the prescription needed to be renewed by a physician." Furthermore, defendant related "[t]here is no indication in plaintiff's complaint that he went to sick call complaining of pain or discomfort" during the interim when his prescription lapsed and he was waiting for a renewal. Also, defendant offered there has been no evidence presented to establish plaintiff "sought non-prescription medications such as Tylenol while awaiting his Ibuprofen." Defendant contended plaintiff did not supply any medical evidence to support his claim that he suffered injury as a result of the delay involved in

receiving his prescription medication. Defendant further contended that to the extent plaintiff's claim involving delay in obtaining prescription medication is construed as an action based on medical professional malpractice then such claim is subject to dismissal since plaintiff has neither provided an affidavit of merit as required by Civ.R. 10(D)(2)[1] nor expert medical testimony.[2]

{¶ 26} Plaintiff filed a response explaining he was originally issued a prescription for ibuprofen that was "an open-ended, no time limit order from the Ortho Specialists." According to plaintiff, his prescription was subsequently changed by the CCI physician "to one that has to be renewed every 90 to 180 days (on occasion, as little as 30 days)." Plaintiff pointed out he has been charged a medical co-pay each time he has sought to have his prescription renewed at defendant's institution. Plaintiff reasserted that it is indeed defendant's normal policy to permit nurses such as CCI staff Nurse Amy Jones to write prescriptions for a doctor's signature, but Nurse Jones did not follow this policy when plaintiff was seen at sick call on or about July 23, 2008. Plaintiff offered "CCI has, sometimes, only one General Practitioner available for approximately 3000 inmates, so the Medical Department has a usual practice of renewing prescriptions by having the nurse write it up for the Doctor to review and sign at his convenience." Plaintiff acknowledged Nurse Jones had a right to not follow this stated procedure, but maintained she acted negligently by not ensuring he was seen by a physician in a timely manner. Plaintiff argued from the facts presented involving the conduct of Nurse Jones, he is not required to provide expert testimony to establish (1) her actions fell below the standard of care required of a medical professional and (2) consequently, caused him injury.

{¶ 27} In regard to the issue of defendant's delay in dispensing prescription medication to plaintiff, the court finds a "medical claim" has been alleged. Plaintiff has put forward a "medical claim" for the purposes of Civ.R. 10(D)(2) without filing the required affidavit of merit.

{¶ 28} A "medical claim" is defined in R.C. 2305.113(E)(3) as "any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home or residential facility, or against a licensed practical nurse, registered nurse, advanced

---

[1] See *Fletcher v. Univ. Hosps. of Cleveland,* 120 Ohio St. 3d 167, 2008-Ohio-5379.

practice nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person."

{¶ 29} Based upon the allegations of plaintiff's complaint, the court finds that plaintiff has asserted a "medical claim" as that term is defined in R.C. 2305.113(D). The rule in regard to supplying an affidavit of merit to pursue a "medical claim" is applicable to actions filed under R.C. 2743.10. See *Burns v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2008-11214-AD, 2009-Ohio-4679.

{¶ 30} Civ.R. 10(D)(2) provides, in pertinent part:

{¶ 31} "(a)***[A] complaint that contains a medical claim, dental claim, optometric claim, or chiropractic claim, as defined in section 2305.113 of the Revised Code, shall include one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability. Affidavits of merit shall be provided by an expert witness pursuant to Rules 601(D) and 702 of the Ohio Rules of Evidence."

{¶ 32} Plaintiff did not file an affidavit of merit with his complaint. The Supreme Court of Ohio has held that where plaintiff fails to file the affidavit required by Civ.R. 10(D)(2), the complaint fails to state a claim for relief. *Fletcher v. Univ. Hosps. of Cleveland*.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

LEE HAMPTON

Plaintiff

v.

---

[2] *Bruni v. Tatsumi* (1976), 46 Ohio St. 2d 127, 75 O.O. 2d 184, 346 N.E. 2d 673

CHILLICOTHE CORRECTIONAL INSTITUTION

      Defendant

      Case No. 2009-04530-AD

Deputy Clerk Daniel R. Borchert

ENTRY OF ADMINISTRATIVE DETERMINATION

Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of plaintiff in regard to his claim for property loss in the amount of $31.85, which includes the filing fee. For the reasons set forth in the determination on the claims of negligence, judgment is rendered in favor of defendant. For the reasons set forth in this determination on any action involving medical claims, plaintiff's claims are DISMISSED without prejudice. Court costs are assessed against defendant.

_____
DANIEL R. BORCHERT
Deputy Clerk

Entry cc:

Lee Hampton, #A154-328
15802 St. Rt. 104 North
P.O. Box 5500
Chillicothe, Ohio 45601-0990

Gregory C. Trout, Chief Counsel
Department of Rehabilitation
and Correction
770 West Broad Street
Columbus, Ohio 43222

RDK/laa
2/12
Filed 3/5/10
Sent to S.C. reporter 7/1/10